**UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **ANTHONY (NMN) BILOUS,** | ) | **Case No. 20-60293-CAN7** |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| ------------------------------------------------- | ) | |
| **DANIEL J. CASAMATTA,** | ) | |
| **ACTING UNITED STATES TRUSTEE,** | ) | |
| | ) | |
| **Plaintiff.** | ) | |
| | ) | |
| v. | ) | Adv. No. 20-_____-CAN |
| | ) | |
| **DEIGHAN LAW, LLC** | ) | |
| **f/k/a LAW SOLUTIONS CHICAGO LLC,** | ) | |
| **d/b/a UPRIGHT LAW LLC,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MEAGAN HOWE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

Plaintiff Daniel J. Casamatta, Acting United States Trustee for the Western District of Missouri ("United States Trustee" or "UST"), by and through counsel, states and alleges the following upon information and belief[1]:

---

[1] The Plaintiff has not conducted any pre-filing discovery in this case since the underlying bankruptcy case was set for likely dismissal on April 28, 2020. The Plaintiff reserves the right to amend this complaint as permitted by the Rules of Bankruptcy Procedure and the Rules of Civil Procedure as discovery progresses. This complaint is based on the facts of this case as shown through the written documents filed with the Court, and the Plaintiff's prior experience and litigation with Defendant UpRight Law.

1

**Jurisdiction and Venue**

1. This is a complaint in which the UST is seeking compensatory and injunctive relief as well as the imposition of sanctions against Deighan Law, LLC, formerly known as Law Solutions Chicago, LLC, and doing business as UpRight Law, LLC, ("UpRight Law") and Attorney Meagan Howe, who provided legal services to Debtor Anthony Bilous ("Debtor") in case number 20-60293, now pending in the United States Bankruptcy Court for the Western District of Missouri, Southern Division.

2. The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b) and a general order of reference from the United States District Court for the Western District of Missouri.

3. This proceeding is both a constitutionally and statutorily core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) in that it asserts only claims arising directly under title 11 of the United States Code. Nevertheless, to the extent any of these proceedings are non-core, the UST consents to the entry of a final judgment by the Bankruptcy Court in accordance with the local rules of this Court.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**Parties**

5. Plaintiff is the duly appointed Acting United States Trustee for Region 13, which includes the Western District of Missouri.

6. Plaintiff has standing and files this Complaint in his official capacity pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 307.

7. Defendant, UpRight Law is an Illinois limited liability company with its principal place of business in Chicago, Illinois.

8. UpRight Law provided legal services to the Debtor in connection with the filing of a Chapter 7 bankruptcy case, docketed as case number 20-60293 (the "Bankruptcy Case").

9. Defendant Meagan Howe, a member of the bar of this Court, purports to be a partner of Upright Law ("Mr. Cooper"). Ms. Howe executed and electronically filed the bankruptcy petition, schedules ("Schedules"), and the statement of financial affairs (the "Statements") in this case utilizing the Court's CM/ECF system.

10. Fred Moon serves as the duly appointed Chapter 7 Trustee (the "Chapter 7 Trustee").

## Procedural History

11. The Debtor filed his voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on March 24, 2020 (the "Petition").

12. Ms. Howe signed the Debtor's Petition on page 7 as counsel for the Debtor. Ms. Howe's signature block on the Petition attests that she was filing this case as an attorney of Upright Law.

13. The Debtor did not file all his required documents with the Petition. Accordingly, the Court issued three separate Orders to Show Cause ("OSC") on March 25, 2020.

14. The first OSC noted that the Debtor declared in the Petition that he had received timely credit counseling but failed to attach a certificate of credit counseling. The Debtor was therefore directed to file a copy of his certificate of credit counseling by April 8, 2020, or the case would be dismissed.

15. The second OSC noted that the Debtor failed to indicate on his petition whether he had a middle name or use the required NMN (no middle name) designation. It also noted the Debtor failed to attach required evidence of payments received from employers in

3

the 60 days before filing or contain an affidavit that no such payments were received. Again, the Debtor was directed to correct these deficiencies by April 8, 2020 or have the case dismissed.

16. The third OSC noted that the Debtor failed to file the Declaration regarding Electronic Filing. This Declaration is required to authorize counsel to file the case electronically and use electronic signatures and must be filed with the petition. The Debtor was required to file the required declaration no later than April 1, 2020.

17. On April 2, 2020, the Court issued a fourth order to show cause, this time directed at Ms. Howe. This OSC directed Ms. Howe to show cause in writing why her Disclosure of Compensation was inconsistent with this Court's local rules concerning fee agreements in Chapter 7 cases. Ms. Howe was directed to respond by April 16, 2020 and the Court set a hearing for April 28, 2020.

18. The docket also reflects that Ms. Howe and UpRight Law have failed to comply with Bankruptcy Court Local Rule 2016-1 by certifying that she has executed the required Rights and Responsibilities or by filing the required full fee application, as the fee in this case exceeded $1,000.00.

19. On April 8, 2020, Ms. Howe filed the Declaration regarding Electronic Filing. This document was filed seven days late and without Ms. Howe obtaining an extension of time.

20. On April 8, 2020, Ms. Howe filed the certificate of credit counseling. The certificate noted the Debtor obtained the required briefing on September 24, 2019.

21. On April 13, 2020, the Court issued a fifth OSC, directing the Debtor to show cause why his case should not be dismissed under Section 109(h) of Title 11, because the

certificate of credit counseling demonstrated the required briefing was obtained 182 prior to filing. The OSC directed the Debtor to file a response by April 20, 2020 and set a hearing on April 28, 2020. The OSC also directed Ms. Howe to show cause why her attorney fees should not be disgorged if the Court were to find that the petition was not filed in compliance with Section 109(h).

## **Factual Allegations Relevant to All Counts**

*A.  The Structure and Business Model of UpRight Law*

22. UpRight Law operates primarily from its main office in Chicago, Illinois.

23. As of June 1, 2015, UpRight Law had three equity Members, Kevin Chern, Jason Allen, and David Leibowitz (the "Equity Members").

24. In early 2019, UpRight Law asserts that Mr. Allen and Mr. Chern departed the firm in separate transactions.

25. Mike Deighan is now the majority equity member of UpRight Law and the firm has changed its' legal name to Deighan Law, LLC.

26. UpRight Law's advertising, including its website, asserts that UpRight Law is a nationwide consumer debtor law firm, and that it is committed to "Ensuring Fairness delivering fair and just outcomes for all parties, including those facing financial and other disadvantages."

27. UpRight Law's advertising asserts that it is committed to "Increasing Efficiency delivering fair and just outcomes effectively, without waste or duplication."

28. UpRight Law's website advertises that it can assist the Debtor in repairing a credit score and represents that "we've partnered with experts in the credit rehabilitation business to offer you the information and guidance you need. This valuable

5

information, paired with our credit report auditing, will help set you on the path toward a future free from financial stress."

29. UpRight Law commences cases in bankruptcy courts throughout the United States, including in this Court, through its affiliations with locally licensed attorneys.

30. UpRight Law refers to its local attorneys as "limited partners" (and/or "partner attorneys") based on the execution of a "Partnership Agreement".

31. The Partnership Agreement provides for the division of fees between UpRight Law and the limited partner on a case by case basis based on the completion of certain tasks in the case by the limited partner in a chapter 7 or a chapter 13 case.

32. The Partnership Agreement also provides for the distribution of 1% of the profits generated in each jurisdiction to the "limited partners" in that jurisdiction on a yearly basis.

33. The Partnership Agreement appears wholly inconsistent with, and contrary to, UpRight Law's structure as a limited liability corporation (LLC).

34. UpRight Law began accepting clients to commence bankruptcy cases in this jurisdiction beginning in approximately March of 2014.

35. Beginning in approximately October 2015, UpRight Law changed its compensation structure and allocation of responsibilities between the Chicago employees and the "limited partners". In chapter 7 cases, the "limited partners" now receive up to thirty-three percent of the fees paid to UpRight Law. In exchange for an increase in compensation to the "limited partner", the "limited partner" is now responsible for all document collection and review, preparing the draft petition and schedules with the exception of basic information – such as the debtors' address, the part of the statements

concerning UpRight Law's compensation, and the preparation of the required Rule 2016 disclosures – which are all prepared by employees in UpRight Law's Chicago office.

36. Thus, as of October 2015, the UpRight Law firm retains sixty-seven percent of the fees in each chapter 7 case for performing the initial consultation, preparing and obtaining a signed retainer agreement, managing the debtors' payments to the firm, and completing a small portion of the required petition, schedules, and statements to be filed with the court.

37. The policy and practice of UpRight Law since its inception is to perform the debtors' initial consultation using *non-attorney* staff employed in UpRight Law's Chicago office.

38. UpRight Law considers the activities of its non-attorney consultants to be part of its "sale operations".

39. The policy and practice of UpRight Law is for debtors' first substantive contact with UpRight Law to be with a consultant who is frequently a non-attorney and who is typically compensated, at least in part, on a commission or bonus basis tied to the fees collected by that consultant.

40. According to UpRight Law and its practices, the role of the consultant is to obtain intake information from the debtor, including income and expense information and the debtor's debts.

41. UpRight Law consultants then provide the debtor information about the debtor's bankruptcy and non-bankruptcy options, including information as to the nature of relief under each chapter of the Bankruptcy Code, all of which, UpRight Law asserts, is

publically available information.

42. There is demonstrated historical evidence that UpRight Law's consultants often provide legal advice to potential clients, including exemption information and information about which chapter of bankruptcy best suits their needs.

43. According to UpRight Law's practices, the consultant and potential client agree on a bankruptcy option and the consultant then establishes an agreed plan for the payment of the attorney's fees in the case. In most cases this results in an installment payment plan lasting 4 – 8 months.

44. After the consultant reaches a payment agreement with the debtor, the consultant reads the debtor a "verbal retainer" which sets forth the conditions of the representation.

45. UpRight Law then sends the debtor a written retainer agreement under the signature of the "limited partner".

46. The limited partner whose signature appears on the retainer agreement delegates signature authority to UpRight Law's Chicago staff. Accordingly, in the vast majority of cases, the limited partner has not reviewed or approved the sending of the retainer agreement in each specific case.

47. According to UpRight Law's practices, the "limited partner" to whom the case is being assigned is then sent an email instructing the "limited partner" to contact the debtor for the compliance call.

48. With the exception of the compliance call and responding to creditor inquiries concerning its retention, UpRight Law maintains the policy and practice in the ordinary case to withhold doing any substantive work on preparing the debtor's bankruptcy case for filing, including the collection or the review of any documentation, until after the

debtor has paid their fees through any installment payment plan in full.

49. Therefore, only *after* the fees are paid in full will UpRight Law, including its limited partners, typically begin preparing the case for filing or start sending the debtor a document request.

50. The practice of accepting fees on a lengthy installment plan and not preparing any of the documents prior to full payment contributes to a lengthy delay in the filing of the case by UpRight Law from the time they are retained that is significantly longer than experienced by other debtors who retain traditional counsel located in this District.

51. As a result, it may take from nine months to a year from the date debtors make their first payment and retain UpRight Law before their chapter 7 case is finally commenced (if at all) in this District.

52. UpRight Law has a demonstrated history of significant filing delays in the Western District of Missouri dating back to 2014.

53. UpRight Law estimates it has commenced hundreds of bankruptcy cases in Missouri since the middle of 2014.

### B.   *Facts Related to the Bilous Case*

54. According to Question Sixteen of the Debtor's Statement of Financial Affairs, executed under penalty of perjury, the Debtor retained UpRight Law to prepare and file a bankruptcy case on or before August 25, 2018, which was approximately eighteen months before this case was filed.

55. The Debtor's case was originally assigned to UpRight Law limited partner Terry Garner, based upon the disclosures in response to Question Sixteen on the Debtor's Statement of Financial Affairs.

56. Mr. Garner was suspended from the practice of law in the State of Missouri by the Missouri Supreme Court on October 29, 2019.

57. At the time the Debtor became a client of UpRight Law, Ms. Howe was not affiliated with the firm.

58. According to Question Sixteen of the Debtor's Statement of Financial Affairs, the Debtor completed his payments to UpRight Law on or before February 5, 2019. Thus, the Debtor was paid in full for over a year prior to his case being filed.

59. In response to Question Fifteen of the Petition, the Petition declared that the Debtor "received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion."

60. UpRight Law arranged for the Debtor to obtain his credit counseling through MoneySharp Credit Counseling, Inc.

61. UpRight Law paid for the Debtor to obtain his credit counseling through MoneySharp Credit Counseling, as it is UpRight Law's standard business practice to collect the credit counseling fee as part of its attorney fees and to pay for the credit counseling.

62. UpRight Law has a contractual arrangement with MoneySharp Credit Counseling, Inc. to provide credit counseling.

63. Ms. Howe, as a limited partner and on behalf of UpRight Law, prepared the Debtor's Petition.

64. The Petition indicates that it was signed on March 10, 2020, which was two full weeks before the case was ultimately filed.

65. At the time the Debtor signed the Petition, it was true that the Debtor had obtained credit counseling within one-hundred and eighty days.

66. However, because Ms. Howe and UpRight Law inexplicitly did not file this case for another two weeks, the credit counseling certificate expired.

67. At the time Ms. Howe filed the case on March 24, 2020, the certificate of credit counseling had expired and the statements in the Petition concerning the timeliness of credit counseling were no longer true.

68. The Debtor is an "assisted person" within the meaning Section 101 of Title 11.

69. Both UpRight Law and Ms. Howe are "debt relief agencies" within the meaning of Section 101 of Title 11, in that they both rendered bankruptcy services to an assisted person, the Debtor, in the Bankruptcy Case, for compensation.

### Count I – Violation of Section 526(a)(2) of Title 11

70. Paragraphs 1-69 of this Complaint are incorporated by reference.

71. UpRight Law and Ms. Howe did not adopt any system for tracking when the credit counseling certificate expired and the failure to do so was unreasonable given the substantial delays in case filings known to occur at UpRight Law.

72. UpRight Law and Ms. Howe intentionally filed the petition on March 24, 2020, without undertaking any investigation to determine if the credit counseling certificate had expired.

73. UpRight Law has been found to have violated Section 526(a) in numerous other cases throughout the country and has a demonstrated a clear and consistent practice of violating Section 526(a).

74. Ms. Howe's signature on the petition constitutes a verification that she had no reason to believe that at the time of filing, any statement in the petition was false.

75. Any reasonable care by UpRight Law and Ms. Howe in verifying the validity of the

credit counseling certificate would have led them to realize that by March 24, 2020, the certificate had expired.

76. By filing the petition on March 24, 2020 within a statement that the Debtor had obtained credit counseling within one-hundred and eighty days of the filing, Ms. Howe and UpRight Law violated Section 526(a)(2) by making a statement, or advising the Debtor to make a statement in a document filed with the Court which was untrue, and which, through the exercise of reasonable care, would have been known to them to be untrue.

WHEREFORE, the Plaintiff prays for a final order and judgement on Count I:

a) Finding that both Defendants violated 11 U.S.C. § 526(a)(2);

b) Finding that such violations by Deighan Law were part of a clear and consistent pattern or practice;

c) Finding that such violations by both Defendants were done intentionally;

d) Imposing an injunction pursuant to 11 U.S.C. § 526(c)(5)(A) against Deighan Law and barring Deighan Law, LLC from engaging in conduct which would violate Section 526(a), including filing pleadings with false statements of fact; and

e) Imposing an appropriate civil penalty pursuant to § 526(c)(5)(B) of the Bankruptcy Code not to exceed $30,000 against Deighan Law, LLC and not to exceed $2,500 against Ms. Howe.

## Count II- Violation of Section 526(a)(3) of Title 11

77. Paragraphs 1-69 of this Complaint are incorporated by reference.

78. UpRight Law advertises and represents to substantially all potential clients that it is efficient in the filing of bankruptcy cases.

79. In agreeing to represent the Debtor in this Bankruptcy Case, and by entering into a representation agreement with the Debtor to file a Chapter 7 Bankruptcy Case, UpRight Law misrepresented to the Debtor its ability to file a Chapter 7 Bankruptcy Case in the Western District of Missouri within a reasonable amount of time after the Debtor completed his payments to UpRight Law.

80. UpRight Law has a demonstrated history of failing to timely file cases in the Western District of Missouri dating back to at least 2014.

81. In fact, UpRight Law had been sued by the United States Trustee in this district for delays in filing cases dating back to 2014, and such suit was pending at the time UpRight Law agreed to represent the Debtor.

82. UpRight Law has been found by other bankruptcy courts not to timely file cases.

83. UpRight Law has been scrutinized by the Better Business Bureau due to a demonstrated pattern of consumer complaints regarding UpRight's failure to provide diligent representation and timely file cases and admitted as such previously.

84. In this case, the Debtor paid his fees in full to UpRight Law in February of 2019, and no case was commenced until March of 2020.

85. Ms. Howe and UpRight Law filed three additional other cases in this district since January of 2020 which contain statements indicating lengthy filing delays from the time UpRight Law was paid in full.

86. UpRight Law has a clear and consistent pattern of practice of representing to debtors that it can, and will, file a bankruptcy case in this district within a reasonable amount of time when it has a demonstrated record of failing to do so.

87. Any express or implied representation to the Debtor that UpRight Law could, and

would, timely file a Chapter 7 Bankruptcy Case in the Western District of Missouri after the completion of the Debtor's payments was false and misleading and UpRight Law knew of the falsity of such representations given its history of failing to timely file cases in this district.

WHEREFORE, the Plaintiff prays for a final order and judgement on Count II:

a) Finding that both Defendants violated 11 U.S.C. § 526(a)(3);

b) Finding that such violations by Deighan Law, LLC were part of clear and consistent pattern or practice and were done intentionally;

c) Imposing an injunction pursuant to 11 U.S.C. § 526(c)(5)(A) against Deighan Law, LLC and barring Deighan Law, LLC from engaging in conduct which would violate Section 526(a), including representing to Debtors that it is "efficient" or able to timely file a case; and

d) Imposing an appropriate civil penalty pursuant against Deighan Law, LLC under § 526(c)(5)(B) of the Bankruptcy Code not to exceed $50,000, given that Deighan Law is a repeat offender in this district.

## Count III- Disgorgement of Fees Paid Pursuant to 11 U.S.C. § 329(b) and Rule 2017

88. Paragraphs 1-69 of this Complaint are incorporated by reference.

89. As a result of the delays in filing the Debtor's Bankruptcy Case, the Debtor incurred additional unsecured debt and was sued by at least one creditor.

90. The Debtor sought assistance for filing a bankruptcy case and contacted Upright Law because he believed UpRight Law would be able to help him in that regard. The Debtor paid a total of at least $1,400 to UpRight Law for bankruptcy assistance. The Debtor then was forced to wait almost a-year-and-a-half *after* UpRight Law began first

providing bankruptcy assistance and over a year *after* having paid UpRight Law in full before UpRight Law finally commenced his Bankruptcy Case, during which Debtor suffered appears to have incurred additional debt and was sued by at least one creditor.

91. Then, when the case was finally filed, the case has become subject to dismissal because UpRight Law and Ms. Howe failed to timely file the case which resulted in the Debtor's credit counseling certificate expiring.

92. Any compensation paid by the Debtor to UpRight Law for the basic bankruptcy services provided over the extensive number of months of its retention due to UpRight Law's own apparent disregard and lack of diligence is excessive given the Debtor almost certainly will not receive a discharge in this Case. Accordingly, such fees must be disgorged back to the Debtor pursuant to 11 U.S.C. § 329. The retention of any fees by UpRight Law is unreasonable and unconscionable under the facts and circumstances of this Bankruptcy Case.

WHEREFORE, the Plaintiff prays for a final order and judgment on Count III:

a) Determining that the retention of any fees in this case by Defendants Deighan Law, LLC and Ms. Howe is unreasonable in this case;

b) Ordering disgorgement of such fees to the Debtor pursuant to 11 U.S.C. § 329(b) and Rule 2017; and

c) For any other and further relief the Court deems just and proper under the circumstances.

**Count IV – Sanctions for the Filing of a False or Misleading Pleading Pursuant to Section 707(b)(4)(C) of Title 11 and Fed. R. Bankr. P. 9011**

93. Paragraphs 1-69 of this Complaint are incorporated by reference.

94. Ms. Howe signed and filed the petition on behalf of UpRight Law.

95. Ms. Howe's signature on the petition constituted a certification that upon reasonable inquiry, Ms. Howe believed the allegations in the petition were well ground in fact.

96. By the time Ms. Howe and UpRight Law filed the Petition in the Bankruptcy Case on March 24, 2020, it was no longer well-grounded in fact because Ms. Howe and UpRight Law knew, or should have known upon a reasonable investigation, that the Debtor's credit counseling certificate had expired, and the Debtor was no longer eligible to be a Debtor under Section 109(h) of Title 11 of the United States Code.

97. The statement in the Petition filed by Ms. Howe and UpRight Law on March 24, 2020 that asserted that the Debtor had received credit counseling within the one hundred and eighty day period prior to filing, and thus was eligible to be a Debtor in this case was demonstrably false on March 24, 2020.

98. The safe harbor and motion provisions of Fed. R. Bankr. P. 9011(c)(1) do not apply to this case, as the conduct occurred in the filing of a bankruptcy petition.

99. The Petition was not well grounded in fact and did not comply with the duties of counsel under § 707(b)(4)(C) of the Bankruptcy Code and Fed. R. Bankr. P. 9011.

100. Under the facts of this case, the Court has cause to impose sanctions under Rule 9011; its Inherent Authority to regulate the practice of law; and, may remedy violations of § 707(b)(4)(C) of the Bankruptcy Code, violations of the bankruptcy rules and violations of counsel's duties as an officer of this Court through the entry of orders under § 105(a) of the Bankruptcy Code.

WHEREFORE, the Plaintiff requests a final order and judgment on Count IV:

a) Finding that Law Deighan Law, LLC and Ms. Howe violated § 707(b)(4)(C) of the

Bankruptcy Code and Fed. R. Bankr. P. 9011 related to the filing of the Petition; and

b) Ordering the Defendant UpRight Law, LLC to pay the Plaintiff's attorneys' fees and costs as a civil remedial sanction or, in the alternative, imposing a monetary sanction sufficient to deter the repetition of this conduct; and

c) Ordering Ms. Howe to attend no less than six additional hours of continuing legal education in ethics and diligence; to ensure that she does not repeat such misconduct in the future.

## Count V – Sanctions for Violations of the Rules of Professional Conduct Concerning Diligence and Competence

101. Paragraphs 1-69 of this Complaint are incorporated by reference.

102. This Court has the inherent authority to impose "disciplinary" sanctions for misconduct occurring in the representation of debtors before this Court.

103. The Missouri Rules of Professional Conduct ("Professional Rules") are incorporated by reference into the local rules of the United States District Court for the Western District of Missouri and into the local rules of this Court.

104. Rule 4-1.1 of the Rules of the Supreme Court of Missouri require that a lawyer provide competent representation including "thoroughness and preparation reasonably necessary for the representation."

105. Rule 4-1.3 of the Rules of the Supreme Court of Missouri require that a lawyer "shall act with reasonable diligence and promptness in representing a client."

106. UpRight Law and Ms. Howe failed to comply with Rules 1.1 and 1.3 by failing to diligently file the Debtor's case. In fact, it took over a year to file the case. By the time the case was filed, the Debtor was no longer eligible to be a debtor. Accordingly, his

case will be dismissed.

107. UpRight Law has a demonstrated history of failing to timely and diligently file cases in this district.

108. Given UpRight Law's demonstrated history of non-compliance with the Rules of Conduct in this District, significant sanctions are required.

WHEREFORE, the Plaintiff requests a final order and judgment on Count V:

a) Finding that Deighan Law, LLC engaged in sanctionable misconduct by routinely violating Rules 1.1 and 1.3 of the Missouri Rules of Professional Conduct, as incorporated into the local rules of this Court, related to the diligence and promptness of representing clients in this district and has an ongoing pattern or practice of such violations occurring between March of 2014 and the present;

b) Imposing an appropriate sanction against Deighan Law, LLC to include a bar on the commencement of new cases in this District for an appropriate period time not less than one year, to run consecutive to any practice bar issued by this Court in Adversary Case No. 17-4048 now pending in this Court;

c) Finding that Ms. Howe violated Rules 1.1 and 1.3 in this Case, and imposing a sanction of probation, together with a non-monetary sanction of additional education, to include not less than six hours of continuing legal education in diligence and filing practices (to be concurrent with any such sanction issued under Count IV).

Dated: April 20, 2020

                                              Respectfully submitted,

                                              Daniel J. Casamatta
                                              ACTING UNITED STATES TRUSTEE

Document      Page 19 of 19

BY: /s/ Adam E. Miller
Adam E. Miller, MO Bar #65429
Trial Attorney
Office of the United States Trustee
Charles Evans Whittaker Courthouse
400 East 9th Street, Room 3440
Kansas City, MO  64106
(816) 512-1940
(816) 512-1967 Telecopier
adam.e.miller@usdoj.gov